375 A.2d 721

**COMMONWEALTH of Pennsylvania**

v.

**Ronald GRACE, Appellant (two cases).**

Supreme Court of Pennsylvania.

Submitted Nov. 19, 1976.

Decided July 8, 1977.

544

William J. Manfredi, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Gaele Barthold, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION

EAGEN, Chief Justice.

Ronald Grace was convicted by a jury of murder of the second degree and robbery. Concurrent judgments of sentence of life imprisonment and not less than ten

nor more than twenty years imprisonment were imposed. These appeals followed.[1]

■ ■ A timely written "motion in arrest of judgment or for a new trial" was filed in the trial court, but only "boiler-plate" challenges to the validity of the convictions were advanced in this motion. It did include a request for permission to file "additional reasons in support of this motion" after the transcription of the notes of testimony but "additional reasons" were never filed in the form of a supplemental motion. On appeal, several assignments of error are asserted which were not included in the post-verdict motion filed in the trial court and under *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975) may be ruled waived. However, at the time of argument on the post-verdict motion appellant's counsel did file a "memorandum in support of motion for a new trial" which included all of the assignments of error now advanced and the trial court accepted and considered the merit of these assignments of error without objection. Under the circumstances, we will consider the issues preserved for our review. We do so because in written "memorandum" assured certainty in the record *and* assures us the issues were presented to the post-verdict motion court. But we again remind counsel that written post-verdict motions must be filed and these motions must include every assignment of error which counsel wishes to preserve for appellate review.

The first three assignments of error relate to the admission at trial of testimony identifying Grace as one of the guilty parties. The relevant facts are as follows:

On May 3, 1974, at approximately 12:45 p.m., three males committed a robbery in a grocery store at 218 West Indiana Avenue in Philadelphia, and fatally shot the proprietor, Hilario Montezuma Ramos. The three

1. The appeal from the sentence imposed on the robbery conviction was filed in the Superior Court and certified here.

then fled. An officer, Leslie Stewart, pursued two [2] of the felons and was fired upon by one of the two. All three felons escaped immediate apprehension, but about 15 minutes later Grace was apprehended while hiding in the basement of a factory in the immediate vicinity.

During direct-examination a Commonwealth witness, Roberta McCullough, testified that she lived at 219 West Indiana Avenue; that a short time before the robbery she was standing by a side door to her residence from where she could observe the grocery store; that she observed three men standing "for a few minutes" near the store; that she saw them then walk towards the grocery store; that she turned away from the doorway and then heard a sound similar to the backfire of an automobile; that, a couple of seconds later, she heard the same sound three or four more times; that she then opened the screen door and observed three men coming out of the store; that she saw Officer Stewart alight from an automobile and "hit the ground" when two more shots were fired; that the men she first observed near the store were the same men she saw come out of the store; that Grace, the appellant, was one of the three; that he was wearing a "sailor's" hat at the time; and, that she had seen Grace approximately a "dozen" to "two-dozen" times previously in a tavern in the immediate vicinity.

During cross-examination, she testified that while she recognized Grace at the time of the crimes from having seen him previously, she did not know his name; that she provided the police with a statement at the Police Administration Building a few hours after the incident; that she also discussed the event with a neighbor who informed her of Grace's name; that she described Grace to the police as five feet eleven one hundred and thirty pounds, wearing a hat and yellowish-brown jacket, dark pants, black combat boots and being in his twenties

2. Stewart testified to observing only two persons fleeing the scene.

or early thirties;[3] that she observed the men for only five to ten seconds as they were coming out of the store, but they were facing her at the time and she saw Grace's face; that the three men who came out of the store were the same she first observed; that after being at the administration building for a few minutes, she "got a quick glance of" Grace as he went by her but could not say if he was handcuffed or being held by a policeman; that her "glance" of Grace was shorter in time than her observation of him at the scene of the crimes; that on the third day following the incident she was taken by police to the House of Correction where she identified Grace during a lineup; and, that she did not know if an attorney was present at the lineup.[4]

At the conclusion of the questioning of McCullough, the following occurred at sidebar:

"MR. MANFREDI: I have a motion to strike all of her testimony the reason being that during my cross-examination it became evident that this woman took part in a out-of-Court identification procedure in the form of a line-up. The reason I ask that her testimony be stricken is because time and time again since I have been appointed to represent this man I have made inquiry of the district attorney as to whether there was any out-of-Court identification at issue in this case or whether any out-of-Court identification by any witness existed in this case and I have been told by every district attorney assigned to the case, by Mr. Strauss himself at the beginning of this trial that there was no out-of-Court identification.

3. She also described the other two men she observed for the police.

4. At this point the Commonwealth interposed by asking the court to take judicial notice of the fact that "at all times at all lineups at the prison there is a voluntary defender and an assistant district attorney present . . .." Defense counsel responded by asking the court not to do so. The court merely indicated that questioning should proceed.

"Because of the misinformation I have received defense counsel did not file motion to suppress that out-of-Court identification.

"I think not only does it appear that such a procedure existed here but I think that arguably the procedure is improper because if your Honor recalls the witness said that prior to making the identification of the defendant at the House of Correction she had in fact the opportunity to see him in custody at the police station and sometime prior to the out-of-Court identification.

"I am not saying that as a matter of law this is improper but it certainly was an issue that should have been litigated because I was misled by the district attorney's office.

"For that reason I would move to strike the testimony of this witness.

"MR. STRAUSS: Your Honor, first of all, number one, Mr. Manfredi did ask me and my answer was to him after the trial had started that I didn't get this case until the day we started picking a jury and I didn't look at the file until we started picking the jury and he asked me that question along the line and I said I didn't know. I didn't talk to the witness and the first time I talked to this witness was this morning. I had no idea that there was an identification up at the prison or not.

"If there was or if I knew about it, I would have brought it out but I didn't handle the suppression hearings in this case nor any preliminary motions so Mr. Manfredi, as any skilled, competent defense lawyer knows, any time a motion is filed it is to suppress all identification and he was negligent in not filing the motion to suppress out-of-Court identification.

"After he hears the witness say her piece he wants to strike her testimony. That just isn't the way. You should have filed the proper motion.

"THE COURT: I have the benefit of both of your views.

"The motion is denied."

Officer Stewart, who testified before McCullough, testified at trial and identified Grace as one of the two men whom he saw coming out of the store. During cross-examination, Stewart admitted that he had not provided his superiors with a description of Grace as he had the other man he saw with Grace; that he observed Grace in custody at homicide headquarters subsequent to the crimes; and, that he identified Grace at the preliminary hearing.

No objection to the admissibility of Stewart's identification testimony was made at trial. The notes of testimony from the preliminary hearing, where trial counsel also represented Grace, indicate that Stewart's testimony at this hearing was substantially similar to that he gave at trial.

Josefina Montezuma Ramos, the wife of the deceased, Hilario Ramos, who testified after McCullough, said through an interpreter that she was present in a kitchen connected to the store at 12:50 p.m. on May 3, 1974 when the three robbers entered the store; that Grace was one of the three; and, that she had seen Grace on numerous other occasions in the store.

During cross-examination, she testified that she gave a description of Grace to the police on the day of the crimes; that she went to the police station on the same day and was told by police that "they had one man;" that she saw "this man" at the administration building as he passed by with police officers;[5] that this man was Grace and he was wearing handcuffs at the time; that, following this observation of Grace, she was shown pho-

5. It is apparent from Ramos' testimony, i. e., she did not identify Grace for police at this "showup," that it was a passing "showup" and not a deliberate showing of Grace to Ramos by police.

tographs of various persons from which she picked out a photograph of Grace as one of the three involved in the robbery.

No objection to the admissibility of Ramos' identification testimony was made at trial.

Grace now maintains that: 1) representations,[6] made by three different assistant district attorneys prior to trial that they were unaware of any out-of-court identification procedures,[7] misled him into not filing a motion to suppress and should be treated as statements of an intent not to introduce any testimony of pretrial identifications; and, thus, the evidentiary use of such testimony under the circumstances constitutes reversible error; 2) the testimony of the witnesses McCullough, Stewart and Ramos, as to the pretrial identifications of Grace, should have been excluded at trial because those identifications were secured under highly suggestive circumstances and at a time when Grace was without legal counsel; and, 3) the in-court testimony of these witnesses should have been excluded at trial because it was tainted by the pretrial identifications.

First, we reject Grace's suggestion that representations by the Commonwealth's attorneys that they had no knowledge if out-of-court identifications occurred should be equated with a representation that evidence of out-of-court identifications would not be used as evidence at trial.

6. Grace admits the representations were not made in order to mislead defense counsel.

7. During the trial defense counsel, who is also appellate counsel, asserted at side-bar the representations were that no out-of-court identification procedures occurred. He was challenged in this connection by the assistant district attorney, who represented the Commonwealth at trial and said he only told counsel that he knew of no such procedures. While what was told to defense counsel by the other two assistant district attorneys at the preliminary and suppression hearings is not of record, since counsel now says he was told by these assistant district attorneys they "were not aware of any out-of-court identification procedures," we accept this as correct for the purposes of this appeal.

■ Second, any challenge to the admissibility of the testimony of the witnesses, Stewart and Ramos, as to the identification of Grace pretrial, as well as their in-court identification testimony, has been waived since no objection thereto was entered at trial. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1972). See also *Commonwealth v. Taylor*, 472 Pa. 1, 370 A.2d 1197 (1977) (Plurality Opinion).

■ ■ Third, while an objection to the testimony of the witness McCullough was entered at trial, since no pretrial motion to suppress this testimony was filed as required by the Pennsylvania Rules of Criminal Procedure 323, the objection entered at trial was properly overruled. *Commonwealth v. Pearson*, 450 Pa. 467, 303 A.2d 481 (1973). While counsel sought to excuse the failure to file the required motion on the ground he had been misled by pretrial representations of the assistant district attorneys, we agree with the trial court that these representations which were very limited in nature did not warrant counsel's failure to move pretrial. Additionally, since Grace participated in a pretrial lineup procedure, counsel should have been aware of the possibility of an out-of-court identification.

■ Finally, and most importantly, assuming that the testimony of the witness McCullough as to her pretrial identification of Grace should have been excluded from the trial record, there is no doubt in our minds that her in-court identification of Grace was completely independent of any pretrial identification and was not tainted thereby. See *Commonwealth v. Brown*, 462 Pa. 578, 342 A.2d 84 (1975). See also *United States v. Wade*, 388 U. S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Hence, the admission of the witness's testimony as to pretrial identifications was harmless beyond a reasonable doubt. *Cf. Commonwealth v. Mackey*, 447 Pa. 32, 288 A.2d 778 (1972); *Commonwealth v. Rankin*, 441 Pa. 401, 272 A.2d

886 (1971); *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967).

■ Next, Grace urges the trial court's instructions to the jury were prejudicial because they emphasized the testimony identifying Grace as one of the felons without discussing testimony which tended to weaken the identification. After reading and considering the charge in its entirety, we are convinced this complaint is without merit. See *Commonwealth v. Rodgers,* 459 Pa. 129, 327 A.2d 118 (1974).

Finally, Grace argues that the admission into evidence of an incriminatory statement he made while in police custody warrants reversal because it was obtained while he was without legal counsel and obtained under coercive circumstances. In support of this position, Grace relies on testimony he gave at the suppression hearing to the effect that he was physically abused and not warned of his constitutional rights. This evidence was specifically contradicted by the Commonwealth's evidence and the suppression court credited the Commonwealth's evidence. Thus, only if we were to disregard our standard of review, see *Commonwealth v. Tucker,* 461 Pa. 191, 335 A. 2d 704 (1975), could we find error.

■ Grace asserts that we should disregard our usual standard of review because the officer who interviewed Grace had "no independent recollection" of the interview and was able to testify only by referring to his written chronology accounting the events. This reason in support of Grace's assertion has no support in the record. The record shows that while the officer could not recall exact times during which specific questions and the like were asked, he did testify as to the facts and circumstances, including the general time frame of the interview.

The judgments of sentence are affirmed.

554

ROBERTS and NIX, JJ., concur in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. During the interval following arrest and before trial appellant's counsel was led to believe, by the prosecution, that there were no out-of-court identification procedures. It was reasonable, therefore, for appellant's counsel to rely on there not being any evidence in the form of out-of-court identification and not moving to suppress the same. Accordingly, I cannot conclude that the issue of the admissibility of out-of-court identification testimony was waived.

Since the trial court did not have the opportunity to consider the admissibility of the challenged evidence I would remand for a suppression hearing on that issue.