414 A.2d 70

**COMMONWEALTH of Pennsylvania**

v.

**Stanley BROWN, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1979.

Decided April 30, 1980.

---

288

290

Michael A. Seidman, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Thomas J. McGarrigle, Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO, LARSEN and FLAHERTY, JJ.

## OPINION

NIX, Justice.

On April 5, 1976, appellant, Stanley Brown, was charged with murder and a number of other related offenses in the fatal shooting and robbery of Carmen Falanga, an insurance

agent, who was at the time in question collecting debits in the 2400 block of West Sergeant Street, Philadelphia. After a trial by jury he was convicted of possessing instruments of crime, robbery, criminal conspiracy and murder in the second degree, thereafter post-trial motions were denied and sentences were imposed. Appellant is now attempting to overturn the judgment of sentence on direct appeal, being represented by counsel other than the one who represented him below.

## —Scope of Review—

The first question we must consider is the scope of review that is to be given in this case. In this instance, trial counsel filed post-trial motions of the boiler plate variety, specifically setting forth only a challenge to the sufficiency of the evidence.[1] Of the four issues raised in this appeal, only two of them were briefed and passed upon by the post-verdict motions court. These issues related to the admissibility of the testimony concerning an earlier robbery appellant had allegedly participated in on the same day as the Falanga robbery-killing and alleged prosecutorial misconduct during the summation to the jury. The third issue which relates to the relevance of the testimony presented by Calvin Lesster was not raised in the post-verdict proceedings and not considered by the post-verdict motions court.[2]

In *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975) this Court stated "[h]enceforth, issues not presented in compliance with the rule [Pa.R.Crim.P. 1123(a)] will not be considered by our trial and appellate courts." In *Blair* we interpreted rule 1123(a) as requiring post-verdict complaints to be specifically set forth in the written motion as a

1. On appeal, appellant has wisely abandoned his attack upon the sufficiency of the evidence to support the verdicts entered below. Our review of the record confirms the learned trial court's decision on this question.

2. The final complaint is a charge that trial counsel was ineffective for failing to file a pre-trial motion to suppress the identification testimony. Since this is a pure claim of ineffective assistance, the scope of review of this contention is clear. *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967).

condition for consideration by the post-verdict court and appellate tribunals. *Commonwealth v. Waters*, 477 Pa. 430, 384 A.2d 234 (1978). In *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979), we ruled that sixty days after the filing of that opinion (July 6, 1979) "only those issues included in post-verdict motions will be considered preserved for appellate review." *Id.*, 486 Pa. at 198, 404 A.2d at 1298. This mandate was extended to apply to any post-trial motions filed at the time of the *Gravely* decision "but which may still be supplemented after sixty days from this date." *Id.*, 486 Pa. at 199, 404 A.2d at 1298. Since the post-verdict motions were denied and the judgment of sentence was imposed prior to our decision in *Gravely*, we will treat the two issues which were briefed and passed upon by the post-verdict motions court as preserved for review. *See Commonwealth v. Slaughter*, 482 Pa. 538, 394 A.2d 453 (1978); *Commonwealth v. Hitson*, 482 Pa. 404, 393 A.2d 1169 (1978); *Commonwealth v. Jones*, 478 Pa. 172, 386 A.2d 495 (1978); *Commonwealth v. Pugh*, 476 Pa. 445, 383 A.2d 183 (1978); *Commonwealth v. Perillo*, 474 Pa. 63, 376 A.2d 635 (1977); *Commonwealth v. Grace*, 473 Pa. 542, 375 A.2d 721 (1977).

As to the third issue which was not raised at any point during the post-verdict motion stage, appellant argues that the *Blair* bar should not be applied where the trial court failed to comply with section (c)(3) of rule 1123. Rule 1123(c)(3) provides:

Upon the finding of guilt, the trial judge shall advise the defendant on the record:

that only the grounds contained in such motions may be raised on appeal.

The Commonwealth does not contest the trial court's failure to instruct appellant on the record in accordance with section (c)(3) of the rule and our review of the colloquy at the time of the entry of the verdict confirms this omission. The trial court did instruct appellant that further review was dependent upon the filing of post-verdict motions within seven days, but made no mention of the fact that the

grounds contained in those post-verdict motions determined the scope of that review.

In *Commonwealth v. Cathey*, 477 Pa. 446, 384 A.2d 589 (1978), explained the significance of section (c)(3) of rule 1123 as follows:

> The right to appeal is a personal right which a defendant may relinquish only through a knowing, intelligent and voluntary waiver. *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); *Commonwealth v. Jones*, 447 Pa. 228, 286 A.2d 892 (1971); *Commonwealth ex rel. Robinson v. Myers*, 427 Pa. 104, 107, 233 A.2d 220, 221–222 (1967); ABA Project on Standards Relating to Criminal Appeals § 2.2(b) (Approved Draft, 1970). To assure that any waiver of this right is knowing and intelligent, this Court has promulgated Pa.R.Crim.P. 1123(c) and 1405(b) [—now 1405(c)—] which ensure that defendants are informed not only that they have a right to appeal, but also that any issue they wish to raise on appeal must be raised first in post-verdict motions.

*Id.*, 477 Pa. at 449–50, 384 A.2d at 590.

This same reasoning was followed by the Court in *Commonwealth v. Marrero*, 478 Pa. 97, 101, 385 A.2d 1331, 1333–34 (1978), wherein we stated:

> However, we need not predicate our holding today on a determination as to whether or not the *Grace* [*Commonwealth v. Grace*, 473 Pa. 542, 375 A.2d 721 (1977)] rationale is here applicable. As the appellant properly noted, Rule 1123(c)(3) requires that following the verdict of the jury the trial judge has the obligation to advise the defendant on the record that only the grounds contained in the written post-trial motions may be raised on appeal. Appellant argues that the failure of the trial court to comply with Rule 1123(c)(3) should in itself preclude a finding by the court en banc that counsel's failure to properly prepare post-trial motions constitutes a waiver of issues. We find this argument to be persuasive. Since the record fails to reflect the admonition required by Rule 1123(c)(3) upon the receipt of the verdict, we hold that appellant's

failure to file adequate post-trial motions will not be deemed a knowing and intelligent waiver of his right of appeal. (Footnote and citations omitted).[3]

In view of the foregoing, we will consider the merits of each of the first three complaints raised herein by appellant.

–Merits–

■ Appellant's assignments of error can best be understood after brief summary of the testimony offered in this case. On April 2, 1976, appellant, Stanley Brown, and his accomplice, Harvey Tabron, agreed to obtain money by robbing an insurance agent working in the neighborhood. Appellant armed himself with a manriki (a two and one half foot chain used as a weapon in the martial arts) and Tabron was armed with a .22 caliber handgun. At approximately 12 noon, John Gallen, an employee of the Department of Housing and Urban Development, was inspecting houses in the 2800 block of Bonsall Street in the City of Philadelphia. Laboring under the mistaken belief that Mr. Gallen was an insurance agent, appellant and Tabron approached him and demanded money. They took from him a camera, two boxes of film, pictures, $16.00 in currency and a wristwatch. They then proceeded to West Sergeant Street.

At approximately 1 p. m. on the same day, the decedent, Carmen Falanga, an insurance agent, was collecting debits in the 2400 block of West Sergeant Street. As Mr. Falanga was entering his automobile, appellant grabbed him by the neck with the manriki and pushed him towards Tabron who had a gun drawn. The decedent began to struggle with appellant and drew a gun. The victim fired a shot at Tabron whereupon Tabron returned the fire, striking and killing the decedent.

---

3. Since the question of the relevance of Calvin Lesster's testimony was not considered by the post-trial court, the normal procedure would be to remand the question to the court below for consideration and disposition. *See Commonwealth v. Marrero, supra.* Here, the issue has been clearly drawn and, in view of the other questions that are properly presented for resolution, sound jurisprudence and a consideration for judicial economy would dictate that we reach and resolve the merits of the issue at this juncture.

■ Appellant complains that the testimony relating to the robbery of John Gallen was improperly introduced at his trial. He argues that this testimony was not only irrelevant but also highly prejudicial.

" 'It is a fundamental precept of the common law that the prosecution may not introduce evidence of the defendant's prior criminal conduct as substantive evidence of his guilt of the present charge. It has been succinctly stated that the purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that he has committed other unrelated crimes, and to preclude the inference that because he has committed other crimes he was more likely to commit the crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence' . . . ."
*Commonwealth v. Spruill*, 480 Pa. 601, 606, 391 A.2d 1048, 1049–50 (1978) *quoting Commonwealth v. Terry*, 462 Pa. 595, 599–600, 342 A.2d 92, 94–95 (1975). *See also Commonwealth v. Clark*, 453 Pa. 449, 309 A.2d 589 (1973).

However, where the evidence is relevant, the mere fact that testimony of another crime may be prejudicial will not prevent its introduction into evidence. *Commonwealth v. Lasch*, 464 Pa. 573, 347 A.2d 690 (1973). Thus, evidence of other crimes has been admitted where that evidence tends to prove motive or intent, *Commonwealth v. Terry*, 462 Pa. 595, 600, 342 A.2d 92 (1975), absence of mistake or accident, *Commonwealth v. Peterson*, 453 Pa. 187, 197–8, 307 A.2d 264, 269 (1973), common scheme, plan or design (embracing commission of two or more crimes so related to each other that proof of one tends to prove the others) *Commonwealth v. Wable*, 382 Pa. 80, 82, 114 A.2d 334, 336–337 (1955), and to establish the identity of the person charged with the commission of the crime on trial, *Commonwealth v. Rose*, 483 Pa. 382, 396 A.2d 1221, 1230 (1979). Although it is the prejudicial nature of this evidence that prevents it from being harmless error, *Commonwealth v. Spruill, supra* ["evi-

dence of prior criminal activity . . . is probably only equalled by a confession in its prejudicial impact upon a jury," 480 Pa. at 606, 391 A.2d at 1050–51], when introduced in a trial, its relevancy to the proceeding in question determines its competency.

In the instant case, the relevancy of the robbery of John Gallen was readily apparent. The two crimes were committed within a period of approximately one hour and within a few blocks of each other. The appellant was armed in both instances with the same relatively unique weapon. In both instances, the manner of the attacks upon the respective victims was similar. The proceeds of the earlier robbery, i. e., the camera, was found at the scene of the crime in question. Finally, the same individuals participated in both crimes and both instances resulted from the same criminal design. Under these facts, a challenge to the relevancy of the testimony relating to the initial robbery is obviously without substance. Here, there were several "legitimate [bases] for the introduction of the evidence other than a mere attempt to establish the accused's predisposition to commit the crime charged." *Commonwealth v. Spruill*, 480 Pa. at 606, 391 A.2d at 1050.

 Appellant would next have us find prosecutorial misconduct from statements made by the prosecutor during the course of his closing speech to the jury. The primary guideline in assessing a claim of error of this nature is to determine whether the unavoidable effect of the contested comments was to prejudice the jury, forming in their minds fixed bias and hostility towards the accused so as to hinder an objective weighing of the evidence and impede the rendering of a true verdict. *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974); *Commonwealth v. Van Cliff*, 483 Pa. 576, 397 A.2d 1173 (1979). In making such a judgment, we must not lose sight of the fact that the trial is an adversary proceeding, Code of Professional Responsibility, Canon 7, E.C. 7–19—7–39, and the prosecution, like the defense, must be accorded reasonable latitude in fairly presenting its version of the case to the jury. *Common-*

*wealth v. Cronin*, 464 Pa. 138, 346 A.2d 59 (1975). Nevertheless, we do require that the contentions advanced must be confined to the evidence and the legitimate inferences to be drawn therefrom. *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972). Deliberate attempts to destroy the objectivity and impartiality of the finder of fact so as to cause the verdict to be a product of the emotion rather than reflective judgment will not be tolerated. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978). The verdict must flow from the respective strengths and weaknesses of the evidence presented and not represent a response to inflammatory pleas for either leniency or vengeance. *Commonwealth v. Starks*, 479 Pa. 51, 387 A.2d 829 (1978).

 Where an improper remark is made by the prosecutor, the ultimate test as to whether a reversal of the judgment of sentence is required must depend upon a finding of the reasonable impact of the statement on the jury's factfinding function. Where the remarks are of a nature that would seriously threaten the jury's objectivity and is likely to deprive an accused of a fair trial, curative instructions are inadequate and a trial before another jury is required. *Commonwealth v. Williams*, 470 Pa. 172, 179 n. 4, 368 A.2d 249, 252 n. 4 (1977). *Cf., Commonwealth v. Singletary*, 478 Pa. 610, 387 A.2d 656 (1978); *Commonwealth v. Garrison*, 459 Pa. 664, 669, 331 A.2d 186 (1975); *Commonwealth v. DuVal*, 453 Pa. 205, 218, 307 A.2d 229 (1973). With these general principles in mind, we will turn to the specific statements that are under attack in this appeal.

 The prosecuting attorney began his closing statement as follows:

Prosecutor: Good morning, Ladies and Gentlemen of the jury: Before I start my remarks to you I think it would be noteworthy to note that alongside our system of justice it is the type of system that we have—a person is presumed innocent until he is proven guilty.

Alongside of that system is a system called the adversary system: that is, one side takes one view and the other takes another. Each trial starts from an adversary position.

In this case, Ladies and Gentlemen of the jury, you would not be here if the defendant stood up before the Bar of the Court and said—"I am guilty." You would not be here if his attorney stood up in his stead and said—"My client is guilty." We start with that basic premise, Ladies and Gentlemen of the jury.

I would say that also [defense counsel] has been an Assistant District Attorney, every client that he has ever represented has stood—

Defense Counsel: Objection, Your Honor.

The Court: Noted on the record.

Prosecutor: He stood before twelve people such as yourself and made the same kind of an appeal—

Defense Counsel: Objection, Your Honor.

The Court: Noted on the record.

Appellant observes that this argument was factually in error because trial counsel had never served as an Assistant District Attorney. Moreover, appellant urges that this misstatement of fact may have confused the jury as to defense counsel's role in this particular case. Appellant charges in his brief: "This comment could only serve to have the jury believe that [defense counsel] engages in some type of game when it comes to representing clients in criminal matters." There is nothing in this record to show that this was a deliberate misstatement of fact. Concededly, the comment was gratuitous and of no particular relevance to this lawsuit and was, therefore, ill advised. However, we do not believe that it could have reasonably produced the effect that appellant now seeks to attribute to it. The fact that an attorney at one point in his career has served in the office of the prosecutor does not impugn his integrity or question his sincerity where he is subsequently acting in the capacity of an attorney for the defendant.[4]

4. There is also an intimation by appellant that these statements may have been designed to undermine the appellant's presumption of innocence. We reject such an implication. Although inartful, it is clear that counsel for the prosecution was merely attempting to demonstrate the adversary nature of the proceeding.

■ The other portion of the closing statement which has come under attack appears in the record as follows:

Prosecutor: . . . Harvey Tabron is facing a mandatory sentence of life imprisonment—mandatory—that means no choice. What is his interest? And I think, Ladies and Gentlemen of the jury, if you look at the facts of this particular case, Stanley Brown provided you with the answer—"We are good friends. He was there along with me. I don't know why he would say I helped him rob two people, and in the second robbery killed another."

I will tell you why—because it is the truth. For no other reason—can you get out of Harvey Tabron walking before you, and taking the stand under oath, and destroying any hope for appeal. He testified—"I did it." He not only testified here he did it, but he testified at a prior hearing, a habeas corpus proceeding, where he said—"I did it. Stanley Brown helped me." The defense tells you it looks beyond that. The defense tells you "he was beaten." He told you on direct examination—"Question: Were you beaten? Answer: Not exactly. Question: Were you threatened? Answer: Not exactly. Question: Did you in fact shoot Carmen Falanga? Answer: Yes. Question: Did Stanley Brown help you? Answer: Yes. Question: Whose idea was it to rob the insurance man? Answer: Stanley Brown."

\* \* \* \* \* \*

Stanley Brown tells you—"I don't know why he said I did it. I was at a party."

The defense then tells you, Ladies and Gentlemen, there was a party going on—but who does it present? It presents a Mr. Hill, who—try as hard as I might to pin him down as to time or to location—we could not get an answer out of him. He was so wound up and so oriented to give us a story—a rehearsed kind of story— he didn't want to differentiate. But the defense tells you that—"We produced the defendant and his friend."

The defendant told you what he already told you before —"I am not guilty until you say I am."

If you look at everything he said—what did he say? He made an attempt, after twelve members of the community, listening to the same evidence and facts, said— "Harvey Tabron, you are guilty"—

Defense Counsel: Objection, Your Honor, ask for a mistrial.

The Court: We will take it up later and—

Defense Counsel: Highly irregular to tell the jury the— "No argument at this point."

Prosecutor: But the defendant, Stanley Brown comes before you and tells you "They were wrong. He was not there, just like I was not there." What does he say to support that? I ask you the same question—"Where are the other people?"

Appellant charges that the prosecutor misstated the legal position of the witness, Tabron, in an effort to bolster his credibility before the jury. He points to the fact that an individual who has been convicted of a crime and who has testified against a co-conspirator may still have appellate rights. Appellant is correct in his assertion that the witness, Tabron, may conceivably have appellate remedies still available to him. The essence of this argument is that the prosecution used a misstatement of fact to give this evidence unwarranted credence. Although the prosecutor's statement was technically inaccurate, in that it did not exclude all possibilities, there is no showing that there was a deliberate intent to mislead. Moreover, the effect of this argument was no more than to highlight the fact that the witness's statement was against his own penal interest. This in fact was the case.[5] Since the defense had vigorously

5. Although the possibility of further appellate relief for Tabron was remotely possible and this possibility rendered counsel's statement inaccurate, nevertheless, his admission of guilt in these proceedings would always be available for use against him in any future attempt to assert innocence.

attacked the credibility of this witness, the argument was not only relevant but appropriate.[6]

The next objection to be considered is the relevance of the testimony of Calvin Lesster. Mr. Lesster identified a chain that was found at the scene of the killing as a manriki, a device that is utilized by the Japanese to disarm and apprehend individuals. After establishing his proficiency in the use of this particular weapon, Mr. Lesster attempted to demonstrate to the jury how a manriki is used. The demonstration was cut short by the court who stated, "Stop it. Now, cut this charade and this nonsense out. I don't know if he is proficient or not. Suppose it hit [sic] somebody here. I don't want anymore of this nonsense going on . . . . If you want to ask him about demonstration, he can demonstrate without putting anybody's life in danger here." Ap-

6. Defense counsel's summation clearly called into question the credibility of Tabron:

[Defense counsel:] . . . Harvey Tabron—yes, he made the statement that he committed this crime. . . .

Let's get back to Harvey. The Court is going to tell you several things about Harvey . . . he will tell you he is known Number One, as a convicted felon because he has been convicted of a crime; Number Two, is what they call an "accomplice" because he is saying he is an accomplice of Mr. Brown's. . . . [D]idn't he tell us he would say anything to get out of his predicament? . . If somebody said to him—"Harvey, you will walk out of those bars, but you have to put any one of us involved in this crime"—do you think he would?

[Harvey Tabron] pleads not guilty and goes to trial and is convicted. Now he has a—was convicted of Second Degree Murder—that is life imprisonment—and besides that, convicted of robbery. . .

The Judge could say "life is enough." Give him life and the sentences on the robbery and gun charges running with the life sentence, which means he hopes in twenty years he will get out. Now, he figures—"Oh, if they give me consecutive sentences, I will never get out. What do I have to do to see some daylight?" March him in and he testifies against Stanley Brown.

The defense was the first to bring up the subject of Tabron's conviction and sentencing. By arguing to the jury the effect of his conviction and sentence, the defense cannot complain when the Commonwealth sought to answer the defense allegations in its closing address. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61–62, 337 A.2d 873 (1975). It is clear that the prosecution may, in its closing address, attempt to meet the pleas and arguments made by defense counsel in his summation. *See Commonwealth v. Van Cliff*, 483 Pa. 576, 584–85, 397 A.2d 1173, 1177 (1979) (citing cases).

pellant argues that the testimony was irrelevant and preju-
dicial and requires the granting of a new trial.

Evidence which tends to establish a material fact in
the case or which tends to make a fact at issue more or less
probable, is relevant. *Commonwealth v. Scott*, 480 Pa. 50,
54, 389 A.2d 79 (1978).

> Any analysis of the admissibility of a particular type of
> evidence must start with a threshold inquiry as to its
> relevance and probative value. *Commonwealth v. Jones*,
> 459 Pa. 62, 66, 327 A.2d 10, 13 (1974); *Commonwealth v.
> McCusker*, 448 Pa. 382, 388, 292 A.2d 286, 289 (1972). We
> have cited with approval the test for relevance propound-
> ed by two leading evidentiary authorities, Wigmore and
> McCormick, *Commonwealth v. Jones, supra; Common-
> wealth v. Lippert*, 454 Pa. 381, 384, 311 A.2d 586, 587
> (1973); *Commonwealth v. McCusker, supra.* Wigmore
> defines relevance in the terms of two axioms, "None but
> facts having rational probative value are admissible," and,
> "All facts having rational probative value are admissible,
> unless some specific rule forbids." 1 Wigmore, Evidence
> § 9–10 at 289–95 (3rd Ed. 1940). McCormick suggests the
> following for determining relevance, " . . . [d]oes
> the evidence offered render the desired inference more
> probable than it would be without the evidence? . . .
> Relevant evidence then, is evidence that in some degree
> advances the inquiry, and thus has probative value, it is
> prima facie admissible." McCormick, Evidence § 185 at
> 437–38 (2nd Ed. 1972).
>
> *Commonwealth v. Walzack*, 468 Pa. 210, 218, 360 A.2d 914,
> 918 (1976).

Applying these principles to the facts of the case at hand,
it is apparent that Mr. Lesster's testimony was relevant.
Evidence had been introduced at trial that a long chain had
been found near the body of the deceased. The testimony of
the witness, Lesster, described not only the purpose for
which this chain is normally used, but also corroborates the
testimony of Tabron as to its use in this particular case.
Furthermore, any prejudice that may have been engendered

by the introduction of this evidence was immediately cured by the trial court's wise decision to prevent a further demonstration of the use of this object. We therefore conclude that the testimony was relevant and that any undue prejudice which may have been inspired by this evidence was prevented by the prompt action of the court.

The final claim to be considered is that trial counsel was ineffective for failing to file a pre-trial motion to suppress the identification testimony. Specifically, appellant charges that trial counsel should have made an effort pre-trial to exclude the identification testimony of Tyrone Parks, Bruce Ballard and Tanya Harmon. These witnesses testified at trial that they had observed the defendant wearing a salt and pepper colored jacket in the immediate vicinity of the killing, shortly before the incident. They further testified that after hearing shots, they ran to their doors and saw the decedent lying in the street and a man in a salt and pepper colored jacket running from the scene.

Appellant argues that trial counsel should have filed a motion to suppress "because his cross examination cast substantial doubt on their identifications." This argument is based on excerpts from the cross examination which might suggest that they merely assumed that the individual they saw fleeing from the scene was the appellant because he was wearing the same coat they had observed previously.

A fair reading of the entire record reveals that each of the three eyewitnesses observed appellant's face while he was in the immediate vicinity minutes before the murder. After hearing the shots, they immediately looked out of their doors and saw defendant in flight. While not observing appellant's full face, Parks and Ballard drew their conclusions from the clothes worn by the fleeing man. In view of the proximity of time and space between the point where the witnesses had originally observed the defendant and the time they saw the individual fleeing from the scene it cannot be said, as appellant attempts to suggest, that this identification was pure conjecture. The witness, Harmon, observed the side of appellant's face as he was leaving the scene and,

because of previous and subsequent confrontations, was certain that the individual fleeing was the appellant. The mere fact that the defense counsel's cross examination may have provided some basis for the jury to question the validity of the identification by these witnesses, did not provide a basis for suggesting that there was any reason why this testimony was inadmissible and, therefore, subject to a motion to suppress.

■ The record is devoid of any instance of improper conduct on behalf of the police in obtaining this identification testimony. An officer from the police graphics art unit testified that on the day of the murder, he drew a sketch of the appellant based solely upon the description provided by Parks and later modified this sketch based on Ballard's description. He testified that he did not provide any information to either witness. Another detective testified that he drove Parks and Harmon to the Detention Center where they individually identified appellant during separate line-ups. That officer testified that he did not inform either witness that appellant would appear in the lineup nor did he have any other conversations with them concerning their identification. Interestingly, the appellant in this appeal does not challenge the lineup identifications but rather hints at the possibility of suggestiveness from a statement made during the course of the cross examination of Tyrone Parks.

> Question: (By defense counsel). When you came out of your house and you say the man in the grey coat running, you never saw his face, did you?
>
> Answer: No, I did not.
>
> Question: So you don't know whether or not this man was the same man that was standing at 24th and Huntingdon, or whether or not he was the same man that was on the same street when you were walking to the store?
>
> Answer: No.
>
> Question: Your answer is no, is that correct?
>
> Answer: Yes. But when I got a description, I knew.

Question: You mean that somebody gave you a description?

Answer: That's right, somebody gave me a description. It is upon this vague reference to the possibility of hearsay information that the appellant presently predicates his claim of a suggestive identification. It is to be noted that at no point in the record is any further explanation given as to the source of this hearsay information. Moreover, the record is uncontradicted that the information was not received from police sources.

█ There is no evidence of impropriety on the part of the government in this case. It is more likely that this statement of Parks referred to some information that may have been transmitted to him when he was standing in the presence of neighbors at the scene after the shooting. While this complaint may go to the weight to be given to his conclusion that the man fleeing was in fact the person he had seen earlier, it certainly does not provide a basis for suppression.

█ Most importantly, it is clear from the evidence that each of these witnesses had an ample opportunity to observe the defendant prior to the shooting. Their ability from this observation to describe the appellant was confirmed by the description given to police officials by them and the fact that the two of them had no difficulty in selecting the appellant in separate lineups. Thus, the only avenue available for the attack by the defense was the validity of their respective judgment that the person they saw fleeing after the shooting was in fact the person who they had seen earlier and identified as being the appellant. This area was fully explored by artful cross examination conducted by trial counsel. Further, judgment as to the weight of this testimony was properly left to the jury. We, therefore, can find no basis for a claim of ineffective assistance on the part of defense counsel for failing to attempt to exclude testimony where there was no meritorious or even arguable claim that would support such a motion. *See Commonwealth v. Musi*, 486 Pa. 102, 112, 404 A.2d 378, 383 (1979) (and cases cited therein).

Having examined all of appellant's contentions and finding them to be without merit, we affirm the judgment of sentence.

LARSEN, J., concurred in the result.

ROBERTS, J., filed a dissenting opinion.

MANDERINO, J., did not participate in the decision of this case.

ROBERTS, Justice, dissenting.

I would grant a new trial on the ground that the testimony of witness Calvin Lesster was only marginally relevant and highly prejudicial. At trial, Lesster attempted to demonstrate how to use a manriki, a martial arts weapon. The manriki was not the murder weapon, but was found near the victim's body. The trial judge, cognizant of the inflammatory nature of the testimony, interrupted the demonstration. The following colloquy ensued:

"THE WITNESS: It is used to strangle, to strike it in such a way (indicating)—

THE COURT: Stop it. Now, cut this charade and this nonsense out. I don't know if he is proficient or not. Suppose it hits somebody here. I don't want any more of this nonsense going on. Stop any inflammatory type of demonstration here, immediately.

MR. KING: Your Honor—

THE COURT: If you want to ask him about demonstration, he can demonstrate without putting anybody's life in danger here.

MR. KING: Your Honor, if Mr. Lesster put anyone's life in danger, I would apologize to that, or for that. It was in the process of demonstrating for the benefit of the ladies and gentlemen of this particular jury, an item that was found near the body of the deceased.

. . . . .

THE COURT: It was found alongside of the body of the deceased, and there was no evidence that it was used on

him at all. Now, let's not make it any more inflammatory. You are getting on the borderline now. Does he know anything about this case? Ask him more questions, I don't want to tell you how to run your case, but go ahead.

MR. KING: Your Honor, it is my intention that Mr. Lesster has been qualified as an expert. Other than by the means of a hypothetical question, Mr. Lesster did not participate in the investigation or apprehension of any of the defendants in this case. Therefore, in the true sense of the word, no, he does not know about the facts of this particular case.

BY MR. KING: Q. Sir, what would be the effect of the use of the Manriki in a strangling kind of a fashion, as far as it immobilizing an opponent?

A. Well, it would cut off his air.

Q. By cutting off his air—

A. By pulling his Adams Apple and strangling him, so would cut off his air, which means that he would have no strength to fight back with.

Q. This particular weapon, sir (indicating) assuming for the sake of this hypothetical question, if a victim was approximately six foot two inches tall, approximately 260 pounds in weight, what would be the effect of using this particular device by a smaller person upon—

MR. SANTAGUIDA: Objection, Your Honor.

THE COURT: Objection sustained . . ."

(N.T. 11/3/76, pp. 185–188)

Unlike the majority, I fail to see how the remarks of the trial judge "cured" the prejudicial effect of the aborted demonstration. Rather, this colloquy only served to further "inflam[e] the minds and passions of the jurors," *Commonwealth v. Batty*, 482 Pa. 173, 177, 393 A.2d 435, 437 (1978); *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747 (1977) (plurality opinion). Counsel therefore had no reasonable basis for not preserving his objection in post-verdict motions. Appellant should be awarded a new trial.