444 A.2d 1209

**COMMONWEALTH of Pennsylvania**

v.

**Ralph Dennis WAREN, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued May 6, 1981.

Filed April 23, 1982.

350

William R. Bernhart, Reading, for appellant.

George C. Yatron, District Attorney, Reading, did not file a brief on behalf of Commonwealth, appellee.

Before SPAETH, CAVANAUGH and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from judgments of sentence for possession, possession with intent to deliver, and delivery of cocaine. Appellant argues, first, that the lower court erred in refusing to grant a mistrial or in giving appropriate curative instructions when the prosecutor in his closing address said that the case was "an air tight delivery case," and second, that the lower court erred in its response to a question from the jury. We are not persuaded by the first argument but we are by the second. We therefore reverse and remand for new trial.

The principal Commonwealth witness was Detective Douglass Rentschler. He testified that on September 22, 1978, while working in an undercover capacity with the Reading Vice Division, he met appellant at a row home in Reading, 1763 Cotton Street, and appellant handed him a clear plastic packet with a clear substance inside, in exchange for which he gave appellant $85. Officer Terry Wagner testified that he waited outside, and that after coming out of the row house, Detective Rentschler gave him a clear plastic packet, which he in turn gave to Officer Keith Fister. Officer Fister testified that he took the packet to the State Police Crime Laboratory, and Paul Skrimcovsky of the laboratory testified that he determined that it contained .86 grams of cocaine.

Appellant's defense was, in essence, that he had been "framed." Through Officer Wagner he proved that in discussions among themselves, members of the Reading police had expressed doubt regarding Detective Rentschler's "credibility and honesty." N.T. 57–58. Appellant also called Patricia Ann Randazzo, with whom appellant was living at 1763 Cotton Street. She testified that on September 22, 1978, one Robert Zoltan was living with them. She further testified that when Detective Rentschler came to the door,

[h]e asked Ralph [appellant] if he had any Cocaine and Ralph said no, he didn't, and he said Zoltan and Ralph said, come on in and I'll go see, and so he came in and sat down.

N.T. 80

She described what occurred next as follows:

Q. Did Zoltan room there?

A. A room, yes, the third floor; third floor front bedroom.

Q. Would you please—after Ralph went up to get Zoltan, Ralph came down the steps first, is that correct?

A. Yes, sir.

Q. How far behind was Zoltan?

A. He wasn't on the steps at all. He got down maybe a minute later.

Q. What happened when Zoltan came down?

A. Well, he was almost to the bottom of the steps and he threw something to Rentschler.

Q. Did you see what he threw?

A. A little packet.

Q. Where did it land?

A. Rentschler caught it.

Q. Rentschler gave the money to who?

A. To Ralph.

Q. Where was Ralph then?

A. Well, Ralph was sitting on a chair and across from the chair it was Ralph and then I was on the floor aside of Ralph, and on the other side of the sofa Robert Zoltan, and Rentschler handed the money to Ralph and Ralph handed the money to Robert Zoltan right away.

THE COURT: Do I understand that when Zoltan came down the steps he threw a packet to Ralph?

THE WITNESS: No, to Rentschler.

THE COURT: Oh, to Rentschler.

THE WITNESS: Yes sir.

N.T. 84–86.

In the course of the prosecutor's closing address, appellant's counsel objected. The court responded, "Well, the last comment probably should be disregarded." N.T. 89. Counsel moved for a mistrial. The court denied the motion. Counsel then said:

> May I ask that the stenographer record that Mr. Zelinsky expressed his opinion that the case was an air tight delivery case.
>
> *Id.*

■ "It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or any evidence of guilt of the defendant." ABA Standards Relating to the Prosecution Function § 5.8(b) (Approved Draft 1971). However, "not every injudicious or improper comment by the prosecutor or the court is of such nature and quality that a new trial must be granted." *Commonwealth v. Taliaferro*, 273 Pa.Superior Ct. 151, 417 A.2d 213 (1979). Instead, as the Supreme Court has noted:

> Where an improper remark is made by the prosecutor, the ultimate test as to whether a reversal of the judgment of sentence is required must depend upon a finding of the reasonable impact of the statement on the jury's factfinding function. Where the remarks are of such a nature that would seriously threaten the jury's objectivity and is *[sic]* likely to deprive an accused of a fair trial, curative instructions are inadequate and a trial before another jury is required.
>
> *Commonwealth v. Brown*, 489 Pa. 285, 298, 414 A.2d 70, 76 (1980).

■ In this case the prosecutor's remark was brief, and it was immediately countered by the trial judge. No doubt the counter might have been stronger; the judge might have said that the remark *should* be disregarded instead of "probably" should be disregarded, and he might have explained that it was for the jury, not the prosecutor, to decide which

parts of the conflicting testimony to believe. However, it is not entirely clear that the prosecutor was expressing his personal opinion on the witnesses' credibility. The record does not disclose the context of his remark. It may well be that in context the remark was ambiguous, and that that is why the trial judge spoke as he did. On balance, we are not persuaded that the remark "seriously threaten[ed] the jury's objectivity." *Commonwealth v. Brown, supra.*

–2–

■ After deliberating for something over an hour, the jury sent the trial judge a question: "No. 3, delivery of Cocaine. How do we determine guilt on number 3?" N.T. 102. The judge responded as follows:

Let me go over the definition of delivery. In order to find the defendant guilty of delivery of a controlled substance, in this case Cocaine, Exhibit No. 2, the packet, you must be satisfied beyond a reasonable doubt that the defendant did deliver this packet. Now, delivery means— well, let's take this case, we won't go beyond the facts here. The Commonwealth's testimony was that, as I recollect and if I am wrong you use your own recollection, but as I recollect it the Commonwealth's testimony was that the defendant himself handed it over to the Common- wealth witness, the detective. If you believe that, that's delivery.

The defendant's witness, Ms. Randazzo stated that, no, it didn't happen like that; that one Robert Zoltan came down the steps after being summoned by the defendant and tossed the packet to the defendant.[1] Now, if the defendant had nothing to do with that—by the by, that kind of an action, if you believe it happened that way, is a delivery by somebody. It doesn't have to be on a silver tray, it can be through the air.

1. This was an inaccurate summary of Ms. Randazzo's testimony. As appears from the quotation of her testimony on pages 1210 and 1211, *supra*, she said that Zoltan tossed the packet to Detective Rentschler. However, appellant's counsel did not call this inaccuracy to the court's attention. The court thus was not given the opportunity to correct it.

If the defendant had the control of Zoltan at that point, then the defendant is as responsible for that delivery as was Zoltan. It's possible for both of them to be responsible for a delivery, just as it's possible for two persons to have joint possession. If they both have control, intent to control, ability to control, even though it's not in the pockets of either but both of them have the intention of control and the ability to control, sharing it, they are both guilty of possession. They can be guilty of delivery.

On the other hand—oh, you keep in mind that the defendant's testimony, witness' testimony also is that after the aerial delivery the Commonwealth's witness, Rentschler, paid money to the defendant who then turned it over to Zoltan. Certainly, if the defendant did not intend any delivery he would have stopped that conferring of money. On the other hand, if he had no control over it, it wasn't his, it was not his Cocaine, and if he was not in cahoots with Zoltan, completely disinterested, then I would suppose that you could think that he had nothing to do with the delivery and would not be guilty of it. Anymore questions?

N.T. 102–104.

The following then occurred at side-bar:

MR. BERNHART: I would object to the Court's instructions to the jury and the use of the words, "in cahoots with Zoltan" or that if he was not involved he would have stopped the payment of money.

THE COURT: I didn't say he would have.

MR. BERNHART: I think that is, in effect, telling the jury he is guilty.

THE COURT: Don't you think that's true?

MR. BERNHART: No. I also would take exception to the Court's charge that it could be joint delivery on an accomplice charge to the jury when there is no accomplice charge in the information, and it's not the theory of the Commonwealth's case, and in general the Court's instructions as to constructive delivery. I think the question could have been adequately answered by referring to 35

P.S. 780–102, and at that point to go over the testimony presented at the trial when the Court did not do that in its initial charge is, in effect, directing a verdict of guilty in this case. We think it was noted by the Court's new instruction that the jury has been told to find him guilty. Especially that part if he were not involved he would have stopped the transfer of the money or he would have done something.

Further, the Court's charge that they could consider whether or not Zoltan was under the control of the defendant. I take those specific and general exceptions.

THE COURT: Thank you.

N.T. 104–105.

After the side-bar conference, the court told the jury:

THE COURT: Let me add one thing to what I have said and that is, I do not mean by what I have just told you that I think you should find a verdict of guilty. This is up to you, and unless you are satisfied beyond a reasonable doubt from whatever evidence you choose to believe that the defendant either completely by himself or with assistance of another which he either planned or used or adopted as his own, had control over and adopted it as his act, unless you believe that he made delivery, the defendant made delivery, unless you believe that, then he is not guilty. Otherwise, he is.

MR. BERNHART: May I have an exception?

THE COURT: Thank you.

N.T. 105–106.

The jury retired, and fourteen minutes later returned with a verdict of guilty on all counts (Number 1, possession of cocaine; Number 2, possession with intent to deliver cocaine; and Number 3, delivery of cocaine). N.T. 106.

In his motion for new trial, appellant assigned as error, among other assignments, "[t]hat the Trial Judge ... instruct[ed] the jury in response to its question that ... the Defendant was guilty if he failed to stop the transaction by

not delivering the money." Motion for New Trial, para. 11. We think this assignment was well taken.

If the jury accepted Detective Rentschler's testimony, the proof of appellant's guilt was compelling, for according to the detective, appellant handed him a packet of cocaine and in return received $85. But if instead the jury accepted Ms. Randazzo's testimony, the case was quite different, for according to her, appellant never possessed the cocaine, which, she said, was thrown by Zoltan to the detective.

The importance of this difference between the testimony of Detective Rentschler and Ms. Randazzo may be seen by considering the case of *Commonwealth v. Cameron*, 247 Pa.Superior Ct. 435, 372 A.2d 904 (1977). There five transactions were involved. In three of them the defendant handed the packets of heroin to the undercover officer. In the other two the defendant introduced the officer to the seller but stood by while the sales were consummated; he did not handle the money or the heroin. The jury found him guilty on three counts of delivery and on two counts of criminal conspiracy, the latter counts being based on the transactions in which the defendant never possessed the heroin. In affirming the delivery convictions we noted that delivery was defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship," 35 P.S. § 780–102(b), and said that although "transfer" was not defined in the Act, we had to give it its commonly accepted meaning, namely, "[t]o convey or remove from one . . . person to another; to pass or hand over from one to another . . ." *Commonwealth v. Cameron, supra,* 247 Pa.Superior Ct. at 440, 372 A.2d at 907 (*quoting* Black's Law Dictionary 1669 (Rev. 4th ed. 1968)). Applying this definition, we found the evidence that the defendant had handed the packets to the undercover officer sufficient to prove delivery. In affirming the conspiracy convictions for the two transactions on which the defendant had not handled the money or the heroin, we found the evidence sufficient to support the inference that the defend-

ant and the seller had made an agreement that the transactions should occur.

*Commonwealth v. Metzger*, 247 Pa.Superior Ct. 226, 372 A.2d 20 (1977), is also instructive. There the defendant picked up some LSD for his brother, who sold it to an undercover agent. He argued that he was not guilty of delivery because he had received no money himself but had only acted as an "errand boy." We rejected the argument, pointing out that by his "own testimony he acknowledged that he purchased the drugs and transferred them to his brother who made the ultimate sale to the agent." *Id.*, 247 Pa.Superior Ct. at 230, 372 A.2d at 22. "The offensive conduct," we said, was the transfer "of the prohibited substance." *Id.*

Here, if it accepted the testimony of Ms. Randazzo, the jury might have found appellant not guilty. For according to that testimony he never possessed, and therefore never delivered, the cocaine. To be sure, appellant might even so have been found guilty of conspiracy, 18 Pa.C.S.A. § 903, or as an accomplice, 18 Pa.C.S.A. § 306, except that was not the charge or the Commonwealth's theory. According to the Commonwealth, that is, according to Detective Rentschler's testimony, appellant was not criminally liable for having agreed with Zoltan to deliver cocaine; nor was he criminally liable because he assisted Zoltan in delivering cocaine; instead, he was criminally liable *as the deliverer of the cocaine.* But according to Ms. Randazzo, appellant was not the deliverer: he transferred no "prohibited substance," *Commonwealth v. Metzger, supra,* but only *money* from the detective to Zoltan; it was Zoltan who transferred the cocaine.

Appellant's counsel was therefore correct when he objected that the effect of the lower court's response to the jury's question was that "the jury had been told to find [appellant] guilty." For the court's statement that "[c]ertainly, if [appellant] did not intend delivery he would have stopped that

conferring of money" was the same as telling the jury that even if it accepted Ms. Randazzo's testimony, still—"[c]ertainly"—appellant was the deliverer of the cocaine. Thus appellant was left with no defense—which no doubt explains why the jury returned only fourteen minutes later with guilty verdicts.

It is true, as we have already indicated, that the case would be otherwise if the court had answered the jury's question in the alternative. It might have said that if the jury accepted Detective Rentschler's testimony, it could find appellant guilty of possession, possession with intent to deliver, and delivery, but that if it accepted Ms. Randazzo's testimony, in order to find appellant guilty of those offenses it would have to decide whether he was an accomplice of Zoltan, this being followed by an explanation of what an "accomplice" is.[2] There is some suggestion of such an alternative instruction in the court's remarks. Thus the court referred to the possibility that appellant "had the control of Zoltan." But these references did not amount to an explanation of what an accomplice, or a conspirator, is.

It is also true that after the side-bar conference, the court told the jury that "I do not mean by what I have just told you that I think you should find a verdict of guilty." However, the court never withdrew its statement that "[c]ertainly, if [appellant] did not intend any delivery he would have stopped that conferring of money." The jury was thus left with the erroneous impression that appellant was guilty of delivery no matter how it regarded the testimony: whether it believed, as Detective Rentschler testified, that appellant transferred the packet of cocaine, or, as Ms. Randazzo testified, that Zoltan did.

The judgments of sentence are reversed and the case is remanded for new trial.

2. The Supreme Court held in *Commonwealth v. Perkins*, 485 Pa. 286, 401 A.2d 1320 (1979) that a defendant can be convicted as an accessory even though only charged as a principal.