468 A.2d 488

**COMMONWEALTH of Pennsylvania**

v.

**Albert SANTANA, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 6, 1983.

Filed Nov. 4, 1983.

Petition for Allowance of Appeal Denied March 20, 1984.

300

Joseph N. Bongiovanni, III, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Com., appellee.

Before ROWLEY, POPOVICH and MONTGOMERY, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence by the appellant, Albert Santana, for receiving stolen property entered by the Court of Common Pleas of Philadelphia County.[1] We affirm.

The facts, viewed in a light most favorable to the verdict-winner, consist of the following: At approximately 8:30 p.m. on July 8, 1977, Officers Schmidt and Dzara, of the Philadelphia police department, were patrolling the 900 block of Marshall Street when they heard a burglar alarm going off. They parked their vehicle and began checking the stores in the immediate vicinity. During this search, the officers received a call over the portable radio they were carrying. As a result of that radio call, the officers looked over to 6th

---

1. At trial appellant was found not guilty of burglary and theft by unlawful taking. Also, the trial court sustained a motion for an arrest of judgment of the conspiracy conviction.

Street, which is next to Marshall, and observed at a distance of about 100 feet "three Spanish males coming from a vacant lot, carrying air conditioners." (N.T. 16) Appellant was in possession of one unit while the two others, his brothers, were each holding an end of another air conditioner. The officers did not proceed after these individuals. Rather, following the receipt of a second radio call, the officers drove around to 921 North 6th Street, which is right next to the vacant lot, and saw that the front door to the Hahnemann Medical Center, which was shut down for repairs caused by fire damage, was broken. The lock was hanging and the door jam was apart.

After observing the front of the building, Officer Schmidt walked along the side of the structure, through the vacant lot and towards the rear. At this time, he observed three windows which were covered by a large metal screen. Holes were cut in the windows and alongside of the metal screen were parts of broken air conditioner vents hanging from the window frames. All of the windows were on the first floor, street level. Following this, Officer Schmidt and his partner walked over to and knocked on the door at 917 6th Street, which is the house next to the vacant lot and the place where the officers noticed that the appellant was carrying the unit he was holding. The door was opened by a small child and the officers could see from their vantage point an air conditioner lying on the floor of the hallway. The officers identified themselves and appellant's brother, Efran, who was standing next to the unit and was observed earlier assisting his brother Richard hauling it across the lot, ran upstairs. Officer Dzara pursued Efran upstairs and arrested him along with the appellant, who was about to take a bath in the second floor bathroom. Also, a second air conditioner was located upstairs and confiscated by the police. During this time, Officer Schmidt checked the first floor restroom and found Richard washing his hands. He also was arrested.

Both officers testified to having an unobstructed view of the trio as they made their way across the vacant lot with

air conditioners in hand. In fact, Officers Schmidt and Dzara gave a detailed description of what the three were wearing when they first saw them. From the verdict rendered it is obvious that the trier of fact discounted appellant's testimony denying the presence of the air conditioners (Fedders models) in the home when seized. The court also was presented with evidence that the Administrative Coordinator for the hospital identified the Fedders air conditioners as belonging to the institution. Additionally, the manager of the hospital testified that he gave no one permission to enter and remove the air conditioners from the premises. To reiterate, from the verdict, it is apparent that the judge did not believe appellant's testimony that he had not left the premises 15 to 20 minutes prior to his arrest. In fact, appellant stated that he had remained home all day.

Appellant's version of what had occurred was not persuasive and he, along with his brother Richard, were found guilty of receiving stolen property. *See* note 1, *supra.* Efran, being a juvenile, was not tried as an adult.

Following the denial of a portion of appellant's post-trial motions, sentence was imposed and this appeal was filed. The issues presented for our review by the appellant appear in his brief to this Court in the "Statement of Questions" section and consist of:

I   WAS THERE SUFFICIENT EVIDENCE PRESENTED TO WARRANT THE TRIAL JUDGE IN ASSUMING THAT [THE] VALUE OF THE AIR–CONDITIONERS EXCEED[ED] $50?

II  DID THE MOTION JUDGE ERR IN FAILING TO QUASH THE ARREST AND/OR SUPPRESS THE SEARCH AND SEIZURE OF A WARRANTLESS AND CONSTITUTIONALLY INFIRM ARREST AND SEARCH AND SEIZURE?

Before addressing the merits of appellant's claims, we need to respond to the Commonwealth's argument that neither of the issues raised has been "properly preserved

for appellate review." [2]   For as it sees the question, "[a]lthough the Commonwealth does have a copy of 'boiler-plate' motions filed by the co-defendant [Richard Santana], there is no record of any such motions being filed by this defendant[-appellant]." (Commonwealth's Brief at 4)   In support of its position, the Commonwealth cites us to *Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979), *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975) and Pa.R.Crim.P. 1123(a).

Initially, we note the inapplicability of *Gravely*, which required the submission of specific, written post-trial motions to preserve any issue for trial and appellate review, since its effective date (September 4, 1979) occurred after the alleged post-trial motions were filed on behalf of the appellant here, i.e., in January of 1979. *See Commonwealth v. Davenport*, 307 Pa.Super. 102, 452 A.2d 1058 (1982).   Thus, we must look to the guide posts created prior to *Gravely* to determine whether appellant's claims have been preserved for our consideration.

At the outset, it needs to be mentioned that the standard in effect prior to *Gravely* has been roundly criticized as a patch-work of remedial law that gave little, if any, direction to the bench and/or bar in assessing when and if an issue was or was not preserved for review. *See Commonwealth v. Jones*, 478 Pa. 172, 386 A.2d 495 (1978) (NIX, J., Concurring Opinion); *Commonwealth v. Lennox*, 270 Pa.Super. 254, 411 A.2d 514 (1979); *Commonwealth v. Roberson*, 258

---

**2.** In actuality, the Commonwealth's brief identifies the two issues for review to be: 1) a challenge to the suppression court's ruling; and 2) a challenge to the sentence imposed.   There is no mention of the sufficiency of the evidence question being preserved by the appellant for our scrutiny.   Nonetheless, the question of "waiver" is a subject that can be raised by an appellate court *sua sponte*.   Thus, we will examine all of the issues presented by the appellant in his brief with the "waiver" doctrine in mind. *Cf. Commonwealth v. Lewis*, 288 Pa.Super. 198, 201, 431 A.2d 357, 358 (1981) ("Albeit neither party has specifically raised the question of jurisdiction, 'it is still the affirmative duty of our Court to consider the issue of subject matter jurisdiction.' *Marcus v. Diulus*, 242 Pa.Super. 151, 157, 363 A.2d 1205, 1208 (1976) (citation omitted); *accord Turner v. May Corp.*, [285] Pa.Super. [241], [245] & n. 2, 427 A.2d 203, 204 & n. 2 (1981); *see also Cohen v. Schofield*, 299 Pa. 496, 502, 149 A. 710, 712 (1930).").

Pa.Super. 471, 393 A.2d 455 (1978); *see also Common-wealth v. Holmes*, 315 Pa.Super. 256, 461 A.2d 1268 (1983). Notwithstanding such a fact, we must decide if appellant's claims have been preserved under the pre-*Gravely* standard. *See Commonwealth v. Lynch*, 304 Pa.Super. 248, 450 A.2d 664 (1982).

In deciding what standard we are to look to in determining the question of "waiver," we note that the seemingly unequivocal statement in *Commonwealth v. Blair*, 460 Pa. 31, 33 n. 1, 331 A.2d 213, 214 n. 1 (1975), that, "[h]enceforth, issues not presented in compliance with ... [R]ule [1123(a), Pa.R.Crim.P.,] will not be considered by our trial and appellate courts[,]" was short-lived. For instance, in several cases our Supreme Court refused to adhere to *Blair*, granting appellate review of an issue that had not been presented in a written post-verdict motion so long as it had been briefed to the lower court and the court had considered it on the merits. *See Commonwealth v. Holmes, supra* (citing cases).

What can be gleaned from the post-*Blair* and pre-*Gravely* line of cases is that an issue will be considered preserved, despite the failure by an accused to present it in written form to the trial court (e.g., a Motion For a New Trial and/or in Arrest of Judgment), if a memorandum of law (*Commonwealth v. Grace*, 473 Pa. 542, 375 A.2d 721 (1977)) raising the issue is *filed* and the trial court "accept[s] and consider[s] the merit of the[ ] assignment[ ] of error without objection." *Commonwealth v. Grace, supra*, 473 Pa. at 546, 375 A.2d at 723. *Accord Commonwealth v. Brown*, 489 Pa. 285, 414 A.2d 70 (1980) (citing cases); *Commonwealth v. Hitson*, 482 Pa. 404, 393 A.2d 1169 (1978); *Commonwealth v. Pugh*, 476 Pa. 445, 383 A.2d 183 (1978); *Commonwealth v. Perillo*, 474 Pa. 63, 376 A.2d 635 (1977). In applying this requirement of *filing* to the case at bar, we start by remarking that a document in any criminal matter must be filed in the office of the clerk of courts, 42 Pa.C.S.A. § 2756(a), who in Philadelphia is designated the Clerk of Quarter Sessions. 42 Pa.C.S.A. § 2751(c). Our

review of the "Docket Entries" for the Court of Common Pleas of Philadelphia, Trial Division—Criminal Section, discloses the receipt and recording of the following matters pertaining to appellant's case:

COMMONWEALTH     :    1977 – JULY

      VS.          :     636 – BURGLARY:

ALBERT SANTANA   :        THEFT BY UNLAWFUL TAKING OR DISPOSITION; THEFT BY RECEIVING STOLEN PROPERTY.

---

July 28, 1977     – Application to suppress evidence filed.

November 3, 1977     – Application to suppress evidence filed.

December 8, 1977     – Courtroom 676
Motion to suppress physical evidence and identification evidence, on grounds of lack of probable cause for arrest and illegal search is <u>DENIED</u>.

(Findings of fact and conclusions of law are incorporated in the record.) Rule 1100 waived until January 16, 1978.

Gafni, J.

February 8, 1978     – Petition for extension under Rule 1100(c) filed.

March 7, 1978     – Courtroom 613
Commonwealth's petition to extend time of trial under Rule 1100 is <u>GRANTED</u>. New date is March 29, 1978.

Marshall J.

March 8, 1978     – Courtroom 676
Presiding Hon. Marvin R. Halbert
Defendant present with his counsel, Abraham Needleman, Esquire
Upon being arraigned, Defendant pleads not guilty. Jury trial is waived. Continued to April 5, 1978, Room 676, for further testimony.

April 4, 1978     – Courtroom 676
<u>ADJUDGED</u>:
636 – guilty
Sentence deferred pending filing of post trial motions, presentence investigation, drug evaluation, and psychiatric examination. Same bail to stand.

Halbert, J.

January 3, 1979     – Courtroom 676
Adjudication of April 5, 1978 is corrected to show Defendant guilty of Theft by Receiving Stolen Property only. Not guilty of burglary and theft by unlawful taking or disposition.

306

— Motion for new trial and/or arrest of judgment heard and DENIED.
AND NOW SENTENCE:
636 — not less than two (2) months nor more than twenty-three (23) months in the House of Correction. Defendant to have any drug therapy available while in custody, to continue with an out-patient program when on parole.

Halbert, J.

January 30, 1979   — Notice of appeal to Superior Court filed.
( # 282 October 1979)

Dec. 13, 1982   — Opinion filed.

Halbert, J.

Notes to Testimony — 12–8–77, 3–8–78, 4–5–78, 1–3–79.
THIS IS TO CERTIFY THAT THE ABOVE IS A
TRUE AND CORRECT COPY OF THE DOCKET ENTRIES.
/s/ Mark A – – –    3
C.P. APPEALS CLERK

## LIST OF DOCUMENTS IN THE FILE

1. Application to suppress evidence dated July 28, 1977

2. Application to suppress evidence dated November 3, 1977

3. Petition for extension under Rule 1100(c)

4. Bills of Information # 636, 637, July, 1977

5. Notice of appeal to Superior Court # 282 October— 1979

6. Certified Docket Entries.

(Emphasis added in part)

An examination of the January 3, 1979 post-trial hearing reveals that appellant and his co-defendant brother (Richard) were present and counsel for appellant's brother (Attorney Mazzola) made a statement germane to the case here; viz.:

There is in existence in the Quarter Sessions file written post-verdict motions going to the nature and weight of the evidence, generally filed as boilerplate, as to new trial and arrest of judgment. (N.T. 5)

3. The remaining letters in the Appeals Clerk's last name are undecipherable.

No similar statement was made by appellant's attorney (Kenneth Mirsky).[4]  In fact, the Commonwealth, in its brief to this Court, concedes the submission of such post-trial motions on behalf of appellant's brother Richard, but it specifically disputes the *filing* of equivalent motions by counsel for the appellant. (Commonwealth's Brief at 4) Nowhere in appellant's brief is this statement controverted. Furthermore, as is evident from the reproduced "Docket Entires" *supra* and our thorough review of the record submitted by the prothonotary to this Court, "no copy of these motions is included in the record certified to this [C]ourt under Rule of Appellate Procedure 1921." *Commonwealth v. Lynch, supra,* 304 Pa.Super. at 251, 450 A.2d at 666. *Accord Commonwealth v. Allen,* 478 Pa. 342, 345 n. 1, 386 A.2d 964, 965 n. 1 (1978) (NIX, J., Opinion in Support of Affirmance); *see also Commonwealth v. Cargo,* 498 Pa. 5, 16, 444 A.2d 639, 645 (1982).  Thus, even if we were to admit for the sake of argument to the existence of the post-trial motions, they were never *filed* within the meaning of Rule 1921 and, therefore, did not become part of the record as defined by that Rule for purposes of avoiding a finding of waiver. *See Commonwealth v. Lynch, supra.* The same result would obtain even if we were to consider the issues to have been raised orally. *See Commonwealth v. James,* 482 Pa. 463, 393 A.2d 1199 (1978); *Commonwealth v. Waters,* 477 Pa. 430, 384 A.2d 234 (1978).  And the fact that the trial court considered appellant's issues and reached the merits in its Opinion filed in compliance with Pa.R.App.P. 1925(b) is not sufficient to rectify the deficiency in the record. *See Commonwealth v. Davenport, supra,* 307 Pa.Super. at 111, 452 A.2d at 1063 ("Moreover, although the issues were considered by the court presiding over appellant's post-verdict motion, 'there is no assertion or indication of record that these issues were raised in a brief presented to that court.' *Commonwealth v. Burton,* 491 Pa. 13, 17 n. 1, 417 A.2d 611, 613 n. 1 (1980).").

4. After Attorney Mirsky was elevated to the bench, new (private) counsel was appointed to assist the appellant.  However, there is no allegation made by appellate counsel that prior counsel was ineffec-

Based on the preceding, we conclude that where, as here, there are no post-verdict motions in the record, i.e., filed with the clerk of courts,[5] we must find the appellant's contentions waived, even if the motions were orally argued to the trial judge before the effective date of *Gravely.* *See Commonwealth v. Lynch, supra.*[6]

Judgment of sentence affirmed.

tive for not complying with the dictates of *Blair.* The opportunity for assailing prior counsel's stewardship being when new counsel was appointed, the fact that it was not raised results in the matter being waived. *See Commonwealth v. Seachrist,* 478 Pa. 621, 387 A.2d 661 (1978).

5. As Judge Price so aptly stated in his majority opinion in *Commonwealth v. Roberson,* 258 Pa.Super. 471, 457–476, 393 A.2d 455, 457 (1978):

> Although abide by the supreme court's decisions we must, we simply do not read [*Commonwealth v.*] *Jones* [, 478 Pa. 172, 386 A.2d 495 (1978) ] to place upon this court the obligation of expending time, effort and man power to scout around the prothonotaries' offices in fifty-nine courts of common pleas to unearth briefs that may have been "presented" to the courts, but not made part of the records, in an effort to find defendants' assertions of error preserved. We interpret *Jones* to require that if a defendant presents a memorandum or brief to the post-trial motions court, and, whether filed with the clerk or not, it is included in the record certified to us, then we are constrained to find his assertions preserved and to rule upon them. Absent that, we do not feel compelled to exert this court's energies engaging in a hunting expedition. Until mandated to do so, we will not. (Footnote omitted) (Quoted with approval in *Commonwealth v. Lynch,* 304 Pa.Super. 248, 254, 450 A.2d 664, 667 (1982).)

> Instantly, since there is nothing on the record, or otherwise properly before this Court, indicating appellant preserved his claims in writing, we have no reservations in finding them waived. *See Commonwealth v. Twiggs,* 485 Pa. 481, 483, 402 A.2d 1374, 1376 (1979).

6. We note that appellant cannot complain that he was not advised of the consequences of failing to comply with the specific requirements set forth in Pa.R.Crim.P. 1123. (*See* N.T. 3/8/78 and 4/5/78 at 136–140) *Commonwealth v. Stump,* 281 Pa.Super. 317, 318, 422 A.2d 187, 188 (1980) ("Since no post-trial motions were filed, [appellant's] ... issue is clearly not preserved for our review. Moreover, appellant does not advance any argument alleging a failure to comply with Pa.R.Crim.P. 1123(c) (duty of court to advise defendant of right to file post-verdict motions and consequences of failure to so file)." (Citations omitted)). In the case at bar, the trial court made sure that appellant and his brother were both informed of the consequences of failing to adhere to Rule 1123.