480 A.2d 1126

**COMMONWEALTH of Pennsylvania**

v.

**Emmett COOPER, Appellant.**

Superior Court of Pennsylvania.

Submitted March 23, 1984.

Filed July 6, 1984.

James N. Fitzsimmons, Jr., Uniontown, for appellant.

Gerald R. Solomon, District Attorney, Uniontown, for Commonwealth, appellee.

Before POPOVICH, HOFFMAN and LIPEZ, JJ.

POPOVICH, Judge:

This is an appeal from the Order of the Court of Common Pleas of Fayette County denying appellant's, Emmett Cooper's, Post-Conviction Hearing Act (PCHA) petition. 19 P.S. § 1180–1 *et seq.*, as amended; reenacted as 42 Pa.C.S.A. §§ 9541–9551. We reverse.

At the outset, this Court would like to note that the direction this case has followed can be attributed, in part, to appellant's insistence that he be availed the opportunity to have his conviction reviewed, initially, within the context of the Post-Conviction Hearing Act *vis-a-vis* the post-verdict motion route. We believe this is linked to appellant not being specifically advised that his failure to file post-verdict motions would preclude him from raising "any grounds" that could have been contained therein *on appeal*, notwithstanding his filing of a PCHA petition as a substitute for post-verdict motions. Our rules of criminal procedure do not make allowances for such a procedural slight-of-hand. In other words, if the appellant were to comply with such a procedural irregularity, knowingly and intelligently, he might fall prey to the waiver doctrine. *See* Pa.R.Crim.P.

1123(c)(3). From what we have been able to garner from the record, which is discussed *infra,* appellant had no intention of waiving any issues that could be raised on appeal. *See also* note 2, *infra.*

Having stated the aforementioned, we will now turn to the facts: After a jury trial on June 9–10, 1976, the appellant was found guilty of criminal attempt to commit burglary. 18 Pa.C.S.A. § 901.[1] Following the rendition of the verdict, the trial court immediately advised the appellant that he had a right to file motions for a new trial and for an arrest of judgment within seven (7) days and to the right to have the public defender continue to aid him in this endeavor, free of charge. In particular, the appellant was advised that if the motions were filed and denied he "would have the right to appeal to a high court on the grounds appearing in those motions. If the motions [were] not filed or if they [were] withdrawn, the effect would be that the verdict w[ould] stand." (N.T. ⁶/₉–¹⁰/₇₆ at 70) Further, upon request to address the trial court, appellant wanted to know if he could "be furnished with the post conviction" so he could appeal the conviction on his own. The trial court responded that by filing a post conviction petition, the appellant would be "waiving" his right to file the motions just mentioned. Appellant acknowledged, following an off-the-record discussion with trial counsel, that he wanted to "go post conviction." (*See* N.T. ⁶/₉–¹⁰/₇₆ at 71–73)

Notwithstanding appellant's statement to the contrary, on June 14, 1976, trial counsel filed (boiler-plate) post-verdict motions questioning the sufficiency of the evidence. However, by letter dated June 10, 1976, appellant wrote:

Sir;

I wish to have Attorney Ruane removed from my case & all proceedings that he files in my behalf, I wish to have dismissed, cause [sic] I do not desire to file motions

---

1. Appellant also was charged with attempted burglary and criminal mischief, both of which were dismissed by the court at trial. (N.T. 6/9–10/76 at 5 & 55–56) (Record No. 4)

for a new trial or arrest of judgment. I shall proceed by the post conviction act upon my own.

Thank you

/s/ Emmett Cooper

Witnessed 6–10–76

/s/ James L Smith

/s/ Dillard W Robinson Jr

(Record No. 7)

The aforementioned letter was stamped "JUN 15 1976" as the date upon which copies were sent to, e.g., the district attorney and the public defender.

By Order dated June 21, 1976, the trial judge dismissed without prejudice appellant's PCHA petition on the ground that, since he had not been sentenced, placed on probation or parole, it was untimely filed. *See* 42 Pa.C.S.A. § 9543(2). A copy was sent to the appellant, the district attorney and the public defender on the same day. Thereafter, handwritten petitions for PCHA relief were filed by the appellant, and stamped as received by the Clerk of Courts of Fayette County, on July 27 (claiming court error in dismissing the prior PCHA petition as untimely), August 4 (questioning the manner and sequence in which the petitioner was indicted and tried), August 10 (requesting that the court dismiss the post-verdict motions filed by the public defender) and August 24 of 1976 (arguing that trial counsel violated various canons of ethics and disciplinary rules in trying a case he was not prepared to litigate).

The preceding culminated in the entry of an Order, dated December 20, 1976, granting trial counsel's motion, filed "at the written request of the defendant, Emmett Cooper," for leave to withdraw the post-verdict motions he had filed on Cooper's behalf. Also, on the same date, a hearing was held on appellant's petition that his counsel's post-verdict motions be withdrawn. The court, to assure itself that such a request was knowingly and intelligently made, conducted a colloquy in which the following occurred:

THE COURT. .... Mr. Cooper, when you are convicted by a jury, you have a right within 7 days of that convic-

tion to file an appeal for a new trial and motion for arrest of judgment.

Now, what you are doing there—you are asking the Judge to review what happened and to release you or grant you a new trial. You are alleging in your motions that something happened that should not have happened that affect you rights, and you are asking the Court to do something about it.

Now, when you withdraw that motion for a new trial and arrest of judgment, it is exactly the same as if no motion had ever been filed, and you could not challenge at a later date the validity of the verdict of guilty; that is, what you are saying, you accept what the jury had done, and you are not finding any fault with it, or raising anything by way of defense which would cause them to set that verdict aside.

Do you understand that?

You answer, yes, so that we can put it on the record.

MR. COOPER.  Yes sir.

        *     *     *     *     *     *

THE COURT.  Now, has anyone made any threats or promises to induce you to withdraw these motions?

MR. COOPER.  No sir.

THE COURT.  What was your grade level in school? How far did you go?

MR. COOPER.  Graduated; 12 years.

THE COURT.  So you are able to read and write without any problem?

MR. COOPER.  Yes sir.

THE COURT.  And you did write the letter which you directed to the Public Defender, Mr. Ruane, asking him to file a petition to withdraw your motion for a new trial and motion for arrest of judgment?

MR. COOPER.  Yes sir.

THE COURT.  If I understand then, you are asking for this leave to withdraw, without any pressure and coer-

cion, because this is what you believe yourself·you want to do?

MR. COOPER. Yes sir.

THE COURT. Very well, the Court will permit the withdrawal of the motions.

(N.T. 12/20/76 at 4 & 6)

On January 6, 1977, appellant was sentenced to a term of imprisonment of from three (3) to six (6) years at the State Diagnostic and Classification Center at Huntingdon, Pennsylvania. No appeal was taken therefrom. However, on January 26, 1977, appellant filed two *pro se* PCHA petitions arguing, in essence, that: 1) he was illegally sentenced; 2) trial counsel was incompetent; 3) the trial court refused the petitioner the right to present relevant evidence; 4) a Commonwealth witness perjured himself; 5) "The Court and Public Defender Ruane prevented defendant from appealing his conviction[;]" 6) the jury was improperly empanelled because no blacks were members; 7) the public defender initially appointed to represent the accused should not have been replaced by new counsel from the same office; 8) irrelevant evidence was permitted to be introduced at trial by the court; 9) the charge to the jury prejudiced the accused on the question of credibility; 10) a mistrial should have been granted when evidence of the accused's prior record was introduced at trial; and 11) the evidence was insufficient to sustain his conviction.

Private counsel was appointed for the appellant, but, after said counsel became associated with the district attorney's office of Fayette County, a continuance was granted by the court for the purpose of appointing new counsel. However, the record does not reveal the appointment of new counsel until after the appellant had filed his seventh *pro se* PCHA petition on April 20, 1977, wherein he alleged the ineptness of trial counsel for, *inter alia,* ill-advising him in regard to "appellate and Post Conviction ... appeal ..., in relating to petitioner that the motion for new trial could be withdrawn and re-submitted by petitioner with additional issues." Also, appellant complained that trial counsel "did

cause through his actions ... the unfair and unjust withdrawal of the timely appeal." (Appellant's April 20, 1977 *pro se* PCHA petition at Points 5 & 7) Thus, appellant thought he "should be granted his right to appeal Nunc Pro Tunc." *Id.* at Point 14.

Following the assignment of private counsel, a hearing was held and appellant had his appeal rights re-instated along with the opportunity to file post-verdict motions *nunc pro tunc.* In accordance therewith, private counsel filed post-verdict motions on June 2, 1977. Nonetheless, before the motions could be ruled upon, the appellant filed his eighth PCHA petition in which he re-stated most of the allegations appearing in his other petitions, including the argument that he did not want his attorney to file post-verdict motions because he "wish[ed] to proceed under the Post Conviction Act, by filing a Post Conviction." (Appellant's June 14, 1977 *pro se* PCHA petition at Point 7) Appellant also requested the appointment of counsel to represent him.

On June 27, 1977, private counsel filed a petition seeking leave to withdraw on the grounds that: 1) appellant wanted him to file "a Petition to Show Cause why the sentence should not be vacated" and he declined to do so because there was "no such Motion known or available to counsel[;]" and 2) appellant "ha[d] indicated a dissatisfaction with the manner in which counsel ha[d] been handling the case." (Record No. 28) The petition to withdraw was granted on the date it was filed. However, there is no record evidence of the lower court's disposition of appellant's eighth PCHA petition. This is reinforced by a letter dated July 1, 1977, accompanied by a 12-point document, in which the appellant asks to be advised of the name of the new attorney who replaced counsel who had withdrawn so he could "appeal[ ] the conviction" in his case. Again, there is no evidence of record to indicate the manner in which appellant's request was dealt with by the court.

It seems that appellant had to resort to the filing of a ninth *pro se* PCHA petition on July 28, 1977 to obtain any action. He asserted therein that prior counsel was ineffec-

tive for not availing the petitioner the opportunity to review the post-verdict motions filed, so that he could be assured that "vital issues" were included in said motions in order "to afford petitioner a through [sic] and meaningful appeal." (Appellant's July 28, 1977 *pro se* PCHA petition at 2, Point 1)

By Order dated August 9, 1977, appellant's July 28 PCHA petition was dismissed on the ground that appellant's *nunc pro tunc* post-verdict motions were still "pending" before the same court. (Record No. 32) Notwithstanding this fact, the trial court, by the time the appellant had filed two writs of habeas corpus—one on September 23, 1977 and the other on June 12, 1978, had not yet entered a ruling on the merits of the post-verdict motions. This is confirmed in appellant's first writ, which alleged that the trial court's denial and dismissal of his various petitions was tantamount to "dictating how petitioner must appeal his conviction," i.e., the post-verdict motion route or the PCHA course. (Record No. 33) The second writ echoed appellant's sentiments; to-wit:

... that his appeal rights have and are being denied unjustly by the inordinate delay caused by the courts ... [in] fail[ing] to render a decision on petitioners [sic] motion for arrest of judgement [sic] and new trial .... The delay is further hindering petitioner from further appellate review ... Rule 1123 of *Pa.R.Crim.P.*, clearly states that argument shall be heard promptly after filing of motions for arrest of judgement [sic] and new trial. ... That a period of over one (1) year has elapsed since the filing of the motion is clearly an unjust inordinate delay created by the court depriving petitioner of his right to proper appellate review ....

(Record No. 34 at page 2) (Emphasis in original)

In response, the court issued an Opinion and Order on July 19, 1978 dismissing appellant's habeas corpus action. In doing so, the court wrote, in relevant part:

The defendant ... at a post-conviction hearing on April 14, 1977, informed the Court that he wished to go

through with his motions for new trial; and the Court granted him the right to file the same. Thereafter, June 1, 1977, motions for new trial were filed by court-appointed attorney, Donald McCue. Subsequent to that, *on July 26, 1977, Emmett Cooper then filed an affidavit in writing requesting the Court to dismiss his motions for new trial, which was again done by the Court.*

(Record No. 35 at page 2) (Emphasis added)

We deem it appropriate to make two points at this stage of the discussion. First, there is no record evidence to substantiate the court's remarks in the July 19, 1978 Order that appellant's request to have his post-verdict motions dismissed was granted. This would seem to be consistent with appellant's complaint in his two writs concerning the court's delay in ruling on his post-verdict motions, at least as of the date of the second writ filed June 12, 1978. Moreover, appellant's letters to the Clerk of Courts of Fayette County dated May 4, 1979, May 13 and 26 of 1981 indicate that he (appellant) "lack[ed] ... knowledge concerning the ... status" of his post-verdict motions. (Record No. 38)

Second, it seems incongruous that, as recounted in the July 19, 1978 Order, *appellant's July 16, 1977 request to withdraw his post-verdict motions was granted,* yet the *same judge* issued a subsequent Order on *August 9, 1977* reading that appellant's *"motions [we]re pending in th[e] Court."* (Compare Record No. 32 with Record No. 35)

Since appellant's efforts to discover the status of his motions proved fruitless, he resorted to the use of a tenth PCHA petition on May 8, 1981. Therein, he alleged that "counsel's [sic] were all ineffective", and he had yet to receive "the alleged order dismissing his motions for new trial & arrest of judgement [sic]." (Appellant's May 8, 1981 *pro se* PCHA petition at 3) All of this, appellant argued, impaired his ability to perfect an appeal. (Record No. 44 at page 3)

472

In accordance with appellant's request, counsel was appointed and a hearing was held on October 15, 1981, following which the PCHA petition was "dismissed."

Before this Court, counsel who represented appellant at the PCHA hearing asserts that Attorney McCue was ineffective for "failing to protect APPELLANT'S appeal rights from the allowance of the withdrawal of the second set of post trial motions ... [and,] by failing to notify APPELLANT of the allowance of the withdrawal, the Court abridge[d] his right to appeal." (Appellant's Brief at 6)

The Commonwealth counters that a "careful review of the record findings of the PCHA Court" will substantiate the absence of any evidence to show the ineffectiveness of counsel. (Commonwealth's Brief at 4) We agree with the Commonwealth as to the manner in which the record is to be scrutinized ("carefully"), but we disagree with the conclusions drawn therefrom by the Commonwealth and the PCHA court. Rather, a "careful" examination of the entire record evidences certain inconsistencies that discount the likelihood that appellant knowingly and intelligently waived his right to appeal. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

██ To buttress its position, the Commonwealth directs us to a portion of the PCHA hearing in which prior counsel for the appellant read into the record the text of a letter purportedly sent to the appellant at Huntingdon; to-wit:

[Attorney McCue:]

A. ... I sent a letter to Mr. Cooper advising him that he should obtain another attorney to represent his interests since I was withdrawn.

[Attorney Fitzsimmons—appellant's PCHA counsel:]

Q. You so advised Mr. Cooper that he should retain counsel?

A. I did that by letter directed to him at Huntingdon. "June 28, 1977. Dear Mr. Cooper: On June 27, 1977 Judge Cicchetti signed an order authorizing myself to withdraw as counsel in connection with your post-

conviction and appeal. I would suggest that you immediately contact the Court to obtain the services of another attorney so that you [sic] appeal may be processed without undue delay. I would be pleased to cooperate in any way with your new attorney and make available to him any and all papers which I may have, together with my legal and logical analysis of your case."

    \*        \*        \*        \*        \*        \*

Q. Was there a subsequent communication between you regarding the right to counsel?

A. I didn't have any further communication with Mr. Cooper and I did not receive any communication from an attorney who purported to represent him.

(N.T. 10/15/81 at 16 & 17)

Even conceding, arguendo, that the appellant did receive the June 28, 1977 letter of Attorney McCue, there is record evidence that as of August 9, 1977 appellant's post-verdict/conviction motions, filed by McCue, were still pending before the trial court. (Record No. 32) Thus, the pendency of the motions would preclude the appellant from perfecting a proper appeal, *see* Pa.R.Crim.P. 1123(c)(3) ("... only the grounds contained in such motions may be raised on appeal."), which would be contra the commonality of purpose exhibited in all of appellant's petitions and writs—i.e., to appeal his conviction be it via direct review or pursuant to the PCHA.

    █ The point to be made is that, although appellant may have waived his right to be represented by counsel at the post-verdict stage by not responding to Attorney McCue's letter, *see Commonwealth v. Bolding,* 315 Pa.Super. 444, 462 A.2d 278 (1983); *Commonwealth v. Ross,* 289 Pa.Super. 104, 432 A.2d 1073 (1981), the record is anything but clear as to whether the court granted withdrawal of the motions filed on behalf of the appellant and gave him notice of same. If such had been the case, the time-clock for the filing of an appeal would have commenced. *See* Pa.R. App.P. 903(a) ("... the notice of appeal ... shall be filed

within 30 days after the entry of the order [or judgment] from which the appeal is taken."). Absence of this fact from the record precludes this Court from holding that the appellant waived his right to appeal. Stated otherwise, "the record of the PCHA hearing leaves no doubt that the Commonwealth introduced no evidence to show that appellant waived his right to appeal . . . ." *Commonwealth v. Porta*, 297 Pa.Super. 298, 302 n. 3, 443 A.2d 845, 847 n. 3 (1982), petition for allocatur denied September 1, 1982. In fact, post-verdict counsel admitted that appellant "refused to sign [his] motion to withdraw as counsel [so he] submitted it to the Court" and secured an order allowing his withdrawal (N.T. 10/15/81 at 15–16)

■ Further, we find that the PCHA court's quizzing the appellant concerning his being advised of the consequences of withdrawing his post-verdict motions at the time of trial to be of no moment on the issue of waiver here, since the appellant had his right to file post-verdict motions re-instated (and, thus, a second opportunity to pursue an appeal) *after* his initial waiver following trial *by the same judge that was ruling upon the merits of his most recent PCHA petition.*

■ Accordingly, after "carefully" reviewing the record, we conclude that the PCHA court erred in dismissing appellant's petition. To remedy the error, we direct that the appellant, on remand, be afforded the opportunity to have *his* post-verdict motions filed *and ruled upon,* with the aid of counsel if he so wishes.[2] *See Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *see also*

2. We wish to remark that, from our review of this tortuous record of events, the appellant seems to be under the misapprehension that he can side-step the filing of post-verdict motions and proceed along the PCHA route without running afoul of the waiver doctrine. Quite the contrary is true, unless, of course, appellant alleges "extraordinary circumstances" justifying his failure to act otherwise. 42 Pa.C.S.A. § 9544(b)(2).

As Pa.R.Crim.P. 1123 specifically prescribes, ". . . only the grounds contained in such [post-verdict] motions may be raised on appeal." Ergo, circumventing prescribed procedural rules exposes an accused to the likelihood of having issues not presented in post-verdict motions waived. *See Commonwealth v. Grace,* 473 Pa. 542, 552, 375 A.2d

*Commonwealth v. Stackpole,* 275 Pa.Super. 255, 418 A.2d 709 (1980).

Order reversed and the case is remanded to have appellant's post-verdict motions decided. Jurisdiction is relinquished.

LIPEZ, J., concurs in the result.

721, 726 (1977); *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974); *Commonwealth v. Santana,* 321 Pa.Super. 299, 468 A.2d 488 (1983).

This Court suggests that on remand the appellant be specifically advised, in accordance with the dictates of Pa.R.Crim.P. 1123(b) & (c), "that waiving of post-verdict motion shall preclude [him from] rais[ing] on appeal *any* issues which might have been raised in such motions." In other words, "only the grounds contained in such [post-verdict] motions may be raised on appeal." A failure to adhere to such procedural requirements is not rectified by filing, first, a PCHA petition.

It must be remembered that the PCHA is *not a substitute* for the filing of post-verdict motions. Rather, it supplements "the availability of remedies in the trial court or on direct appeal." 42 Pa.C.S.A. § 9542. Also, it is a vehicle by which an accused can assail his conviction on grounds that were not raised in the trial court or on direct appeal, provided, of course, the issue is not finally litigated or waived. 42 Pa.C.S.A. § 9544(a) & (b). If the issue "could have been raised ... at the trial ... or any other proceeding actually conducted ...," the matter will not be treated, unless "extraordinary circumstances" are proven to justify the failure to raise the issue sooner. 42 Pa.C.S.A. § 9544(b)(2).